UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA RUNKLE,<br>Plaintiff,<br>v.<br>LEA TATE, et al.,<br>Defendants. | Case No. 26-cv-05317-WHO<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 13 |

Plaintiff Anna Runkle brings this case against defendants Lea Tate, in her official capacity as President of the California Board of Psychology, and Jonathan Burke, in his official capacity as Executive Officer of the California Board of Psychology (together, "defendants"), for violations of her constitutional rights under 42 U.S.C. § 1983. Runkle moves for a preliminary injunction that would enjoin defendants from enforcing an order by the California Board of Psychology (the "Board") that requires Runkle to pay a $2,500 fine and "cease all practice that requires a psychology license," pursuant to California Business and Professions Code section 2903. Motion for Preliminary Injunction ("Mot.") [Dkt. No. 13]; Exhibit B to Mot ("Ex. B") [Dkt. No. 13-3] at 17. Runkle asserts that the Board's order impermissibly seeks to limit her speech in violation of the First Amendment and that she will suffer irreparable harm if it is not enjoined.

Runkle has not shown a sufficient likelihood of success on the merits for her First Amendment claims and has not established that the balance of hardships weighs in favor of an injunction. The Board's order and section 2903 enforce state licensing laws that protect the public from the unauthorized practice of psychology and do not violate the First Amendment. The motion for preliminary injunction is DENIED.

## BACKGROUND

Runkle is the owner of a business entitled "Crappy Childhood Fairy" where she seeks to

assist others in overcoming "Complex PTSD" ("CPTSD"). Complaint ("Compl.") [Dkt. No. 1] ¶¶ 27-29. Her business began as a series of YouTube videos in which Runkle "shared her personal experience and offered her techniques and advice to people suffering from similar experiences." *Id.* ¶ 29. She has authored two books: *Re-Regulated*, which discusses CPTSD and some techniques to address it, and *Connectability*, which advises on improving personal relationships and fostering connection. *Id.* ¶ 30. She also has a website where she "offers monthly memberships with large group webinars, group Q&A calls and a private Facebook community, as well as small group coaching programs and live workshops and retreats where participants can learn and apply [her] teaching." *Id.* ¶ 31. She does not hold herself out to be a therapist and the Terms of Service for her program state explicitly that "the advice offered by her 'cannot take the place of a licensed mental health or clinical professional.'" *Id.* ¶ 34.

In 2023, the Board received a complaint from an individual in Maine who "urged the Board to investigate Ms. Runkle for the unlicensed practice of psychology." *Id.* ¶ 36. The complainant said that "she was 'triggered' by the sessions [with Runkle] and cancelled her membership as a result." *Id.* ¶ 37.

In October 2024, the Board issued Runkle a citation for a violation of California Business and Professions Code section 2903. Section 2903 states in relevant part:

> No person may engage in the practice of psychology, or represent themselves to be a psychologist, without a license granted under this chapter, except as otherwise provided in this chapter. The practice of psychology is defined as rendering or offering to render to individuals, groups, organizations, or the public any psychological service involving the application of psychological principles, methods, and procedures of understanding, predicting, and influencing behavior, such as the principles pertaining to learning, perception, motivation, emotions, and interpersonal relationships; and the methods and procedures of interviewing, counseling, psychotherapy, behavior modification, and hypnosis; and of constructing, administering, and interpreting tests of mental abilities, aptitudes, interests, attitudes, personality characteristics, emotions, and motivations.

Cal. Bus. & Prof. Code § 2903(a). Runkle contested the citation and the Office of Administrative Hearings held a hearing in February 2026. *Id.* ¶ 40.

On February 25, 2026, the Administrative Law Judge issued a "Proposed Decision and Order" "affirm[ing] the citation." *Id.* The Board adopted the order on April 27, 2026. *Id.* It

requires Runkle to "pay $2,500.00 to the Board within 30 days of the effective date of the decision" and "cease all practice that requires a psychology license and remove any treatment plans for CPTSD and/or C-PTSD from respondent's service offerings[.]" Ex. B at 17.

In her complaint, Runkle alleges three causes of action for violations of her First and Fourteenth Amendment rights under 42 U.S.C § 1983. She now moves to enjoin enforcement of the Board's order to prevent alleged irreparable harm from these violations. Defendants have opposed this injunction. Opposition to Motion for Preliminary Injunction ("Oppo.") [Dkt. No. 18]. Runkle replied. Reply ISO Motion for Preliminary Injunction ("Reply") [Dkt. No. 21]. This Order follows the hearing on the motion.

## LEGAL STANDARD

A preliminary injunction may be issued under Federal Rule of Civil Procedure 65 if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.@ *Id.* at 22. "[I]f a plaintiff can show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

## DISCUSSION

### I. Abstention Under *Younger v. Harris*

As an initial matter, defendants argue that the *Younger* abstention doctrine—established by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971)—applies to bar review of this matter. *Younger* abstention applies to three categories of cases: (1) "ongoing state criminal prosecutions"; (2) "certain civil enforcement proceedings"; and (3) "civil proceedings involving certain orders . . . uniquely in the furtherance of the state courts' ability to perform their judicial functions." *Sprint*

*Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78, (2013) (cleaned up). Even if a state proceeding falls within one of these categories, *Younger* abstention is only applicable if the proceeding: (1) is "ongoing," (2) "implicate[s] important state interests," and (3) "provide[s] an adequate opportunity in the state proceedings to raise a constitutional challenge." *Herrera v. City of Palmdale*, 918 F.3d 1037, 1044 (9th Cir. 2019) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982)).

Neither party disputes that the proceedings against Runkle are civil enforcement proceedings. Instead, the parties' arguments center primarily around the first factor articulated in *Herrera*—the existence of an "ongoing" state proceeding. Defendants contend that Runkle has "not yet fully exhausted her remedies under state law" because she had the opportunity to file a writ petition with the California Superior Court by June 26, 2026 to challenge the Board's decision. Oppo. at 8. Runkle argues that the Ninth Circuit has not resolved whether the possibility of state court review of a decision renders state proceedings ongoing. Reply at 4–5. She contends that *Younger* abstention would be inappropriate because her claims are brought mainly under 42 U.S.C. § 1983, which does not require exhaustion of state remedies. *Id.* at 3–4.

This circumstance presents an unsettled question in the Ninth Circuit. *See San Jose Silicon Valley Chamber of Com. Pol. Action Comm.("SJSVCCPAC") v. City of San Jose*, 546 F.3d 1087, 1093–94 (9th Cir. 2008) ("Seven circuits have addressed this question. Four have held that the administrative proceeding and the possibility for state court review are to be viewed as one unitary proceeding, and three have held the opposite . . . . Although we briefly joined the majority rule in 1993, that opinion was withdrawn, and we have not addressed the question since then."), *abrogated on other grounds by Sprint*, 571 U.S. at 81; *see also Mir v. Kirchmeyer*, No. 12-cv-2340-GPC-DHB, 2014 WL 2436285, at *11 (S.D. Cal. May 30, 2014) ("The Ninth Circuit has recognized, but not resolved, a split in the Circuit Courts of Appeal as to the question of whether state proceedings are 'ongoing' for the purposes of *Younger* abstention if a plaintiff has obtained final administrative review but has not invoked state-court judicial review where such review is available.").

I do not think that *Younger* abstention applies. The time to appeal has passed and Runkle

did not file an appeal. While this is not dispositive—whether a state proceeding is ongoing is usually determined at the time of filing, *Mir*, 2014 WL 2436285, at *12—as a practical matter, there is no continuing state court proceeding to be disrupted by adjudication in federal court. And there is some tension between defendants' argument and the proposition that "[t]he Civil Rights Act of 1871, after all, guarantees 'a federal forum for claims of unconstitutional treatment at the hands of state officials,' and the settled rule is that 'exhaustion of state remedies' 'is not a prerequisite to an action under [42 U.S.C.] § 1983.'" *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 185 (2019). Given the lack of clear applicability of *Younger* here, I will assess the motion on the merits.

## II. Likelihood of Success on the Merits

### A. Prohibitory Injunction

Runkle argues that this injunction is a prohibitory injunction directed at maintaining the status quo before the controversy arose—the status quo being that she did not have to pay a fine and was able to offer her paid counseling services. Memorandum ISO of Mot. ("Mem.") [Dkt. No. 14] at 4–5. Because of this, she argues that she does not need to show that "the facts and law clearly favor her likelihood of success on the merits," though she still needs to make a clear showing that she is entitled to preliminary injunctive relief. *Id.* Defendants do not address this argument.

"'A mandatory injunction orders a responsible party to take action,' while '[a] prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits.'" *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir.2009)). "[T]he 'status quo' refers to the legally relevant relationship *between the parties* before the controversy arose." *Id.* at 1061. "The difference is legally significant because mandatory injunctions are particularly disfavored, and place a higher burden on the plaintiff to show the facts and law clearly favor the moving party." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023) (internal quotation marks and citations omitted) *overruled on other grounds by Arizona All. for Retired*

*Americans v. Mayes*, No. 22-16490, 2026 WL 2277101 (9th Cir. Aug. 7, 2026). "[I]njunctions that prohibit enforcement of a new law or policy [are often considered] prohibitory." *Arizona*, 757 F.3d at 1061.

It is not entirely clear into which category this injunction would fall. It does appear to involve enforcement "of a new law or policy," which supports Runkle's contention that it is prohibitory. But the status quo is that she has been enjoined and fined, so enjoining the Board's decision would be mandatory. This issue does not matter for resolution of this motion, however, because, as Runkle acknowledges, it is her "burden to make a 'clear showing' that she is entitled to preliminary injunctive relief." Mem. at 5. She fails to carry that burden under either standard.

**B. First Amendment**

Runkle argues that the Board's order interferes with her rights under the First Amendment. She asserts that her paid counseling sessions "[g]iving advice and guidance to others is protected speech." Mem. at 5. Defendants counter that her claims are "foreclosed by the Ninth Circuit's ruling in *National Association for the Advancement of Psychoanalysis v. California Board of Psychology* that California's requirement of a license to practice psychology does not violate the First Amendment." Oppo. at 7 (citing 228 F.3d 1043 (9th Cir. 2000) ("*NAAP*")).

In *NAAP*, the Ninth Circuit found that California's mental health licensing laws did not violate the First Amendment but were instead "properly within the state's police power to regulate and license professions, especially when public health concerns are affected." 228 F.3d at 1054. In making this decision, the court found that the California laws at issue were "content and viewpoint neutral" and not subject to strict scrutiny for their potential limitations on speech. *Id.* at 1055. The court reasoned that "California's mental health licensing laws . . . do not dictate what can be said between psychologists and patients during treatment." *Id.* The court also noted that "[n]othing in the statutes prevents licensed therapists from utilizing psychoanalytical methods or prevents unlicensed people from engaging in psychoanalysis if no fee is charged." *Id.* at 1055.[1]

[1] At the time *NAAP* was decided, the California licensing laws defined the practice of psychotherapy as providing these services for a fee. 228 F.3d at 1047 ("The practice of psychology in California requires a license and is defined as rendering any psychological service to the public 'for a fee.'"). In 2015, the California legislature made a significant change to section

United States District Court
Northern District of California

Runkle argues that "*NAAP*'s conclusion that California's Psychology License Law, including § 2903, is content-neutral is no longer good law." Reply at 7. She contends that the *NAAP* court put significant weight on the intent behind the statute to determine if it was content-neutral. *See NAAP*, 228 F.3d at 1055 ("[T]he principal inquiry in determining whether a regulation is content-neutral or content-based is whether the government has adopted [the] regulation . . . because of [agreement or] disagreement with the message it conveys."). She claims that this analysis is outdated in view of intervening Supreme Court decisions, such as *Reed v. Town of Gilbert*, 576 U.S. 155 (2015) and *Chiles v. Salazar*, 146 S.Ct. 1010, 1023 (2026). Reply at 7-8.

In *Reed*, the Supreme Court addressed a law which "prohibit[ed] the display of outdoor signs anywhere within the [t]own without a permit[.]" 576 U.S. at 159. The law exempted 23 categories of signs—such as ideological signs or political signs—and applied separate regulations and restrictions for each of the exempted 23 categories. *Id.* at 159-60. The Court determined that such a law was content-based on its face because the applicable regulations "depended entirely on the communicative content of the sign." *Id.* at 165. As it was facially content-based, the Court stated it did not need to reach "the government's justifications or purposes for enacting the Code to determine whether it is subject to strict scrutiny." *Id.* at 164–65. It noted that "[a] law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id.* at 165 (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)).

In *Chiles*, the Court found that strict scrutiny applied to a Colorado law that prohibited licensed counselors from engaging in "*any* practice or treatment . . . that attempts . . . to change an individual's sexual orientation or gender identity." 146 S.Ct. at 1018 (citation omitted). The Court noted that "laws regulating speech based on its subject matter or 'communicative content' are 'presumptively unconstitutional.'" *Id.* at 1021 (citing *Reed*, 576 U.S. at 163). The Court

---

2903, "expanding [the] definition" of the practice of psychology, such that charging a fee was no longer a requirement that delineated the bounds of the practice of psychology. 2015 Cal. Legis. Serv. Ch. 529 (A.B. 1374). The *NAAP* court's observation that the statute permits unlicensed individuals to engage in psychoanalysis without charging a fee is no longer applicable.

further stated that "[u]nder the First Amendment, what matters is not how a government describes its law or whether the law may regulate conduct in other circumstances. What matters is whether, in fact, the law regulates speech in the case at hand." *Id.* at 1023–24.

*NAAP* does not conflict with those cases. The underlying principle in both *Reed* and *Chiles* is that a law that is facially content-based is subject to strict scrutiny regardless of the legislative intent behind it. The *NAAP* court did not find that the law was facially content-based and then apply governmental intent to downgrade the level of scrutiny. While the Ninth Circuit did place weight on the intent of the California legislature in enacting the laws, it also held that the law did not "dictate the content of what is said in therapy," only who could be "qualified as a mental health professional"—a clear determination that the law was not facially content-based. 228 F.3d at 1056. *NAAP*'s conclusion is not irreconcilable with existing precedent and has not been overruled. There is no reason not to apply it here.

Runkle additionally argues that, even if *NAAP* controls, the Board's application of the statute to her is in violation of the First Amendment under a theory of intermediate scrutiny because it is not narrowly tailored and does not leave open ample alternatives for her to communicate the information. Reply at 9-10.[2] She contends that "prohibiting [her] from providing her coaching program is the most restrictive means of advancing the Board's interest in

[2] Both parties assume without explanation that *NAAP* applied an intermediate standard of scrutiny. However, the *NAAP* court did not actually clarify which standard it was applying. *See Crownholm v. Moore*, No. 23-15138, 2024 WL 1635566, at *2 n.2 (9th Cir. Apr. 16, 2024) (noting that *NAAP* did "not clearly stat[e] what standard it was applying"), *cert. denied*, 224 L. Ed. 2d 496 (Apr. 20, 2026), *reh'g denied*, No. 24-276, 2026 WL 1718045 (U.S. June 15, 2026) [unpublished]; *but see Tingley v. Ferguson*, 57 F.4th 1072, 1076 (9th Cir. 2023) ("*NAAP* . . . applied mere rational basis review to the law at issue only because it did "not dictate what can be said between psychologists and patients during treatment."). The Ninth Circuit has observed that "[i]f legislation regulates conduct but incidentally burdens expression, we review that legislation under 'intermediate scrutiny' to see whether it 'advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests.'" *Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*, 961 F.3d 1062, 1068 (9th Cir. 2020) (citation omitted); *see also Brokamp v. James*, 66 F.4th 374, 391 (2d Cir. 2023) ("Defendants submit that New York's licensing regime is content-neutral and, in fact, is directed at the *conduct* of mental health counselors, while only incidentally burdening speech. In these circumstances, they maintain that licensing requirements need satisfy only the 'less stringent test' of intermediate scrutiny[.]"). While it is not clear which is appropriate here, my conclusion does not change under either standard. For the purposes of the analysis, I will look at the most stringent standard applicable.

protecting the public," and leaves her with no alternative for communication because it will "silence[] her and shutter[] her business." *Id.* at 10.

I disagree. The Board drew a careful distinction between Runkle's speech through her website, YouTube videos, and books, on the one hand, and her paid counseling programs that involve a "direct transaction between respondent and the viewer or reader" on the other. Ex. B at 13. It observed:

> It is one thing to provide information on CPTSD in social media posts or in books, as there is no direct transaction between respondent and the viewer or reader. It is another where one is, for a fee, providing a service that applies psychological principles to understanding and influencing behavior, which respondent's coaching program offers. Unlike self-help programs like Alcoholics Anonymous or Narcotics Anonymous, which do not require one to pay fees to access such programs, here, respondent is offering, for a fee, a program that uses principles pertaining to learning, perception, motivation, emotions, and interpersonal relationships to understand one's own psychological issues and to influence that individual's behavior. The coaching program offered by respondent constitutes the practice of psychology and thus requires a license.

*Id*. The Board is not restricting Runkle's ability to discuss CPTSD or offer advice generally on the topic. Its order simply prevents her from offering personal treatment plans and other services that reflect the practice of psychology.[3] Such restrictions control the medium by which she can convey her message, but do not impact the message itself. These appear carefully tailored to address the primary issue--to prevent the unlicensed practice of psychology—which is an area in which the state has great interest. Consequently, Runkle has not shown a likelihood of success on the merits.

## III. Remaining Factors

Under Ninth Circuit precedent, a preliminary injunction may still be appropriate if the plaintiff raises at least serious questions as to the merits, the balance of hardships "tips sharply" in favor of an injunction, and the other two factors under *Winter* are also met. *Cottrell*, 632 F.3d at 1135. This concept is known as the "sliding scale test." *Id.* at 1134–35.

Runkle says that she will suffer irreparable harm because her First Amendment rights are

[3] The Board also noted that "there are legitimate coaching peer support activities which do not require a psychology degree or license" that Runkle could explore. Ex. B at 17.



United States District Court
Northern District of California

United States District Court
Northern District of California

being violated. *See Fellowship of Christian Athletes*, 82 F.4th at 694–95 ("Irreparable harm is relatively easy to establish in a First Amendment case because the party seeking the injunction need only demonstrate the existence of a colorable First Amendment claim.") (cleaned up). While a "colorable First Amendment claim" may establish irreparable harm, Runkle has not shown that she has a colorable claim here. Given the clear applicability of *NAAP*, it is hard to see that Runkle raises serious questions regarding her First Amendment claims.

Her second argument is that she will lose her coaching business and clients if the Board's order continues to be enforced because it prohibits her from carrying out her coaching business. It will be difficult for her to maintain clients for this specific program during the pendency of the litigation; those clients may not return should she ultimately succeed. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."), *overruled on other grounds by Winter,* 555 U.S. at 20. That harm does not outweigh the potential harm to the public from the unlicensed practice of psychology. *See Winter*, 555 U.S. at 23 ("[E]ven if plaintiffs have shown irreparable injury from the Navy's training exercises, any such injury is outweighed by the public interest and the Navy's interest in effective, realistic training of its sailors."). The public's strong interest in the protection of the First Amendment that is not at risk here*, see Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014)--the interference with the state's and the public's strong interest in preventing harm from the unlicensed practice of psychology is. *See* Cal. Bus. & Prof. Code § 2900 ("[P]ractice of psychology in California affects the public health, safety, and welfare and is to be subject to regulation and control in the public interest to protect the public from the unauthorized and unqualified practice of psychology and from unprofessional conduct by persons licensed to practice psychology.").

Runkle has not shown that the balance of hardships "tips sharply" in favor of an injunction. Her interests do not overcome her failure to show a likelihood of success on the merits. She is not entitled to a preliminary injunction.

United States District Court
Northern District of California

**CONCLUSION**

For the reasons stated above, Runkle's motion for preliminary injunction is DENIED.

**IT IS SO ORDERED.**

Dated: August 19, 2026

WILLIAM H. ORRICK
United States District Judge